13029

HALL v. RICHARDS, GOVERNOR, *ET AL.*

(156 S. E., 12)

February, 1930.

*To D. W. Robinson, Esq., attorney for plaintiff above named:*

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for appellant,

Messrs. *Thomas & Lumpkin* for the R. L. Bryan Co., respondent,

Messrs. *John M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey, Assistants,* for the other respondents

November 17, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action was brought by the plaintiff, a citizen and taxpayer of Anderson County, against the Governor, the State Treasurer, the Joint Committee on Printing, R. L. Bryan Company, and the State Highway Commission, for the purpose of having declared null and void a contract made by the Governor and the State Treasurer, on behalf of the State, with the Bryan Company, for engraving the certificates of indebtedness proposed to be issued under the

State Highway Bond Act (36 Stat., 670), approved March 14, 1929; and for the further purpose of restraining the payment to that company, on account of such contract, of any funds belonging to the State or to the Highway Commission.

The defendants demurred to the complaint upon the ground, with specifications, that it did not state facts sufficient to constitute a cause of action. The matter was heard by his Honor, Judge Ramage, who passed an order sustaining the demurrer and dismissing the complaint, and from that order this appeal is taken.

The appellant contends that the contract for engraving the certificates could be legally let only by the Joint Committee on Printing, upon competitive bids, and to the lowest responsible bidder (Sections 46 to 69 of Code, Vol. 3, 1922), while the position of the respondents is that certain provisions in Sections 1 and 4 of Article 3 of the Bond Act give to the Governor and the State Treasurer authority to let the contract and to award it in the way it was done.

After careful consideration, I am satisfied that the questions presented by the appeal are correctly disposed of by the order of the Circuit Judge, for the reasons therein stated. But, if I should be wrong in this, I think the matter has been set at rest by an Act of the Legislature (Acts of 1930, page 2150), Section 1 of which reads as follows:

"That all Acts or proceedings done and taken by the Governor and the State Treasurer in relation to the sale of $10,-000,000.00 State Highway Certificates of Indebtedness of the State of South Carolina, which were awarded and sold by said officers on March 21, 1930, to the highest bidder are hereby ratified and validated, and the Governor and the State Treasurer are hereby authorized to deliver the said State Highway Certificates of Indebtedness in accordance with the terms of said sale."

That the Legislature could pass such an Act is not questioned. The appellant's objections to its validity are disposed

of by the decision in *Wingfield v. South Carolina Tax Commission,* 147 S. C., 116, 144 S. E., 846. The further suggestion that the Act is an attempt to validate merely the actual sale of the bonds is clearly without merit. At the time of the enactment of this statute, the sale had just been negotiated, but the certificates had not been delivered to purchasers, and this suit had already been instituted. It was the evident intention of the Legislature, with these facts in mind, to set fully at rest, by the passage of the Act, any and all questions as to the validity of the bonds. And the language used, "all Acts or proceedings done and taken * * * in relation to the sale," etc., is most apt and appropriate for that purpose. I think the Act, when properly construed, covers, validates, and confirms every step taken by the Governor and the State Treasurer, in the preparation, issuance, and sale of the certificates, including the letting of the contract in question.

The order appealed from is affirmed.

MR. JUSTICE CARTER concurs.

MR. JUSTICE COTHRAN (dissenting): This is an action by the plaintiff, Hall, a citizen and resident of the County of Anderson, on behalf of himself and all others similarly situated, against the Governor, the State Treasurer, the Joint Printing Committee, R. L. Bryan Company, and the State Highway Commission, for the purpose of having declared null and void a contract made by the Governor and Treasurer of the State, on behalf of the State with R. L. Bryan Company for the engraving, printing, and furnishing the State highway bonds ("certificates of indebtedness," they are denominated in the Act), which were proposed to be issued under the $65,000,000 "Bond Act," approved by the Governor March 14, 1929; and for an injunction against the carrying out of said contract and the paying out of any funds to R. L. Bryan Company belonging to the State, or to the Highway Commission, on account thereof.

The action was instituted in the Court of Common Pleas of Richland County, on December 16, 1929. The defendants demurred to the complaint upon the general ground, with specifications, which was heard by his Honor, Judge Ramage, in January, 1930. On February 24th his Honor, Judge Ramage, filed an order sustaining the demurrer, and from it the plaintiff has appealed to this Court.

For the purposes of the demurrer the allegations of the complaint are admitted. After the formal allegations of the respective positions of the defendants and of certain provisions of the Bond Act, 36 Stat., 670, the complaint alleges that the Governor and the State Treasurer assumed to themselves the right to make and let a contract for the engraving of the bonds or certificates of indebtedness without advertising them or letting the same on competitive basis; simply by issuing a circular letter, dated October 25, 1929, addressed to R. L. Bryan Company, Columbia, S. C., and to three engraving companies, two in New York and one in Philadelphia, requesting them to quote prices and submit models for the work by 10:00 o'clock on November 2, 1929; that in response thereto bids and models were received from the New York and Philadelphia companies whose bids ranged from 33½ cents to 46 cents per bond; that those bids were furnished and filed before the time fixed in the letter referred to; that the bid of R. L. Bryan Company was not submitted until November 5; that its bid was 52 cents per bond; that the Governor and State Treasurer thereupon awarded the contract to said company on November 6; that the said R. L. Bryan Company was not prepared to and does not itself do engraving work, but simply sublets such contract to some company outside of the State; that the amount of money called for by the contract so let to R. L. Bryan Company is $33,800, an excess of $11,000 over some other of the bids received; that the Governor and State Treasurer had no authority to let such contract, and had no right to award it to the highest bidder, that it had no right to award

the contract at all without advertising for competitive bids; that said contract should have been awarded through the Joint Committee on Printing, and that for such reasons the contract entered into by the Governor and State Treasurer with R. L. Bryan Company is illegal, null, and void.

The demurrer of the defendants was based upon the grounds set forth therein which will be reported; it was sustained by his Honor, Judge Ramage, in an order which also will be reported; from it the plaintiff has appealed upon exceptions which too will be reported.

In its last analysis, the only issue in this case is, Did the Governor and State Treasurer have authority to make the contract for engraving the certificates of indebtedness or bonds for the $65,000,000 issue; and did they have authority to let this contract without advertisement and competitive bids?

The plaintiff contends that this issue should be determined in the negative, upon the ground that, under the Constitution and statutes of the State, the contract could only have been let by the Joint Committee on Printing, upon competitive bids upon compliance by it with the statutory provisions relating thereto. The defendants, on the other hand, contend that the Bond Act (36 Stat., 670) has relieved the committee of this duty, and imposed it upon the Governor and Treasurer; and, if not, that the General Assembly by two enactments have ratified the contract under fire.

The position of the plaintiff *in limine* must be sustained for the reasons which follow, leaving the question to be considered whether effect can be given to the alleged curative statutes as ratifying what had been done.

The question is squarely presented, whether the contract in this case was one authorized by either the general law upon the subject, or by any provision contained in the Bond Act.

Looking then to the statutes upon the subject, we find in Volume 3, Code of 1922, Section 48, the following:

"The Joint Committee on Printing shall have control and supervision of all the Public Printing, Binding, Lithographing, and Engraving for the State or any department of the State Government."

. Section 52 (Civ. Code 1922) prescribes the duties of the committee at considerable length and detail, requiring that it publish notice and call for sealed bids and proposals and how the sealed bids and proposals shall be opened and the contract let to the lowest responsible bidder. It further provides:

"The Comptroller, before issuing his warrant for any bill or voucher for binding, engraving, lithographing, printing * * * shall see that the same is duly approved by the Clerk of the Joint Committee on Printing, and shall refuse to issue his warrant for any not so approved, whether such are to be paid from moneys derived, fees, licenses, taxes or otherwise."

Section 53 provides for a bond from the public printer or party to whom the contract is let, which bond is to be approved by the Governor, the Attorney General, and the State Treasurer.

The disregard of these plain statutory regulations has resulted in this condition of affairs: The circumscribing of the bidding to three establishments, one of which, the R. L. Bryan Company, was not, admittedly, prepared to do the work, but manifestly contemplated a subletting of the contract to one which could do it, naturally at a less price than had been contracted for, thereby losing to the State the margin of profit which the Bryan Company would receive; the rejection of a bid at 33½ cents per bond, and letting the contract at 52 cents, a loss of 18½ cents per bond, on 65,000 bonds, $12,025; the absence of a bond for performance of the contract; the State loses the benefit of the experience of the committee and of its secretary who by the terms of the statute must be a practical printer.

His Honor, the Circuit Judge, held: "It does not appear that there is any requirement therein which would bring this

particular work within the province of the committee on printing." The learned Judge gives no reason for this conclusion, and we cannot conceive of any; the provisions of the Code are as comprehensive as they could be made and unquestionably and specifically include printing and engraving required by the executive or any other department of the State. The statute is a general one and intended to cover every instance, present or occurring in the future.

The suggestion that the undertaking is a mammoth one, and that the interests of the State and of the purchasers of securities of such a large amount and maturing over a long period of time should be protected does not indicate that the looser method should be adopted, with no safeguard, ·in preference to the rigid and protective regulations of the statute.

It is contended that the Bond Act virtually repeals the provisions of the Code and bestows upon the Governor and State Treasurer *carte blanche* to disregard those provisions and proceed as their interpretation of the situation suggested. It is suggested in the order that the handling of this matter was largely in the discretion of the Governor and State Treasurer, and that in so important a matter their discretion should not be hampered or interfered with. It is difficult to find room for the exercise of any discretion in the face of the most positive and mandatory requirements.

The learned Judge in his reasoning finds authority in the Bond Act for the Governor and State Treasurer to let the contract; not only to let the contract, but to let it (in defiance of the statutory provisions which require advertisement and competitive bids) to the highest bidder, as if the State were selling property and not having work done.

We do not find a single suggestion even, in the Bond Act, which tends to authorize the Governor and State Treasurer to let the contract for the engraving of the bonds, much less to impinge upon the duty which by statute was devolved upon the committee.

The question then is presented whether the so-called curative Acts of 1930 have accomplished their design.

The first is a provision in the general appropriation Act of April 5, 1930, to this effect:

"Section 47. *Joint Committee on Printing.* * * * *Provided, further,* That the contract awarded to The R. L. Bryan Co. by the Governor and the State Treasurer for furnishing State Highway certificates of indebtedness be, and the same is hereby ratified and confirmed, and the Comptroller General and the State Treasurer be and they are hereby authorized and directed to make payments for said certificates in accordance with said contract." (36 St. at Large, page 1480.)

It is a sufficient answer to this contention to say that the provision is a matter of substantive law, in no wise connected with the subject of appropriations, is not mentioned in the title, and is in violation of the Constitution, Article 3, Section 17, which requires that "every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title."

The second is the Act which reads as follows:

"Section 1. * * * That all Acts or proceedings done and taken by the Governor and the State Treasurer in relation to the sale of $10,000,000.00 State Highway Certificates of Indebtedness of the State of South Carolina, which were awarded and sold by said officers on March 21, 1930, to the highest bidder are hereby ratified and validated, and the Governor and the State Treasurer are hereby authorized to deliver the said State Highway Certificates of Indebtedess in accordance with the terms of said sale." (Act March 28, 1930 [36 Stat. at Large, page 2150].)

Without considering the very serious objections to the validity of this Act suggested by the plaintiff, it is sufficient to say that it clearly appears to be an attempt to validate the proceedings relating to the sale of the bonds entirely

foreign from the preparation of the bonds and from the contract attacked in the present proceeding.

Besides, if the defendants desired to obtain any benefit from this post mortem legislation, enacted after the institution of this action, they could have done so only by supplemental pleading.

The Court being equally divided, the judgment of this Court is that the decree or order appealed from be affirmed.

MR. JUSTICE BLEASE (dissenting) : I do not agree with all the conclusions of Mr. Justice Cothran in his dissenting opinion, but I am of opinion that the order of the Circuit Judge should be reversed. The demurrer admitted the facts alleged in the complaint, and that pleading set up, according to my view, a cause of action, which should be heard in the lower Court.